IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENT D. GRITZMACHER,

                         Plaintiff,                   OPINION AND ORDER

     v.

                                              07-cv-700-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Kent D. Gritzmacher seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the administrative law judge's decision is not supported by substantial evidence because he erroneously found that plaintiff's substance abuse disorder was a contributing factor material to his disability and erred in finding that plaintiff could perform his past work as a wood shop worker and cook. I find that the administrative law judge properly applied the regulations, evaluating plaintiff's limitations both when he was using

1

drugs and alcohol and when he was not.  Because there is substantial evidence in the record of plaintiff's drug and alcohol abuse and his limitations when he was not using substances, it was not necessary for the judge to consult a medical expert.  The administrative law judge reasonably concluded that plaintiff would not be disabled if he stopped abusing drugs and alcohol.  However, I find that the administrative law judge erred in making his step four determination because he failed to consider the sheltered nature of plaintiff's wood shop position and did not articulate his reasons for concluding that plaintiff could perform work as a cook as generally required in the national economy.  Accordingly, I am reversing the commissioner's determination and remanding this case to the commissioner for further proceedings.

The following facts are drawn from the administrative record (AR):

FACTS

A.  <u>Background and Procedural History</u>

Plaintiff was born on September 30, 1964.  He completed high school and has past work experience as a delivery person and cook.  In 2003 and 2004, he worked part time as a wood shop worker in a compensated work therapy program at the Veterans Assistance Center in Tomah, Wisconsin.  Plaintiff also worked as a roofer for a short period in 2001.  AR 86, 410.  Plaintiff's last insured date was December 31, 2007.  AR 18.

2

Plaintiff applied for social security disability benefits in October 2003, alleging that he had been unable to work since January 1, 2000 because of bipolar disorder, chronic angioedema and drug and alcohol detoxification.  AR 44, 63.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on August 22, 2006 before Administrative Law Judge Donald E. Limer in Wausau, Wisconsin.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  AR 407.  On December 21, 2006, the administrative law judge issued his decision, finding plaintiff not disabled from his alleged onset date through the date of the decision.  AR 12-19.  This decision became the final decision of the Commissioner on October 23, 2007, when the Appeals Council denied plaintiff's request for review.  AR 4-6.

## B.  Medical Evidence

Plaintiff has a long and pervasive history of alcohol dependency and marijuana use. Since turning 21, he has been in multiple inpatient treatment programs for substance abuse. AR 13.

On May 30, 2000, plaintiff was admitted to the Veterans Administration Hospital in Tomah, where he was treated for bipolar disorder.  Staff psychiatrist Dr. McKnight diagnosed plaintiff with alcohol dependence, cannabis dependence and bipolar disorder and

3

prescribed Depakote, Olanzapin and Zyprexa.  Plaintiff was discharged on June 23, 2000.

Although plaintiff had been encouraged to stay another week and agreed to do so, he left

after only two days.  AR 311-12.   On December 4, 2000, plaintiff went to the Veterans

Administration Hospital in Madison for wrist pain.  At that time, he was working as a meat

processor and had recently increased his hours from eight to 12 a day.  AR 190.

On  December  7,  2001,  plaintiff  was  admitted  to  the  Veterans  Administration

Hospital in Madison for detoxification from alcohol.  AR 179-80.  In the intake interview,

he admitted that he was drinking at least a six pack of beer and a liter of Jack Daniels a day

for several days at a time.  The interviewer noted that the whole room reeked of alcohol and

that  plaintiff  was  in  need  of  detoxification  for  his  own  safety.  AR  137.   During  his

hospitalization, plaintiff was diagnosed with bipolar disorder and polysubstance abuse.  AR

168.  He reported that he had been taking Depakote and Olanzapine, which helped his

mood  swings.   However,  plaintiff  admitted  taking  the  medications  only  intermittently

because they caused impotence.  He also reported that his mood swings persisted even during

his periods of sobriety.  Plaintiff admitted abusing marijuana to self-medicate his affective

disorder.  AR 171.  He was started on a new medication, gabapentin, and was discharged

on December 13, 2001, after completing detoxification without complications.  AR 135.

Plaintiff was working as a roofer at the time of this hospitalization.  AR 173.

In January 2002, plaintiff was admitted again to the hospital in Tomah for treatment in a dual diagnosis treatment program. AR 308. He attended group therapy and education classes. He was instructed that his chemical dependency was separate from his mental illness. Throughout the entire 90-day program, plaintiff was hypomanic. He was discharged to independent living on April 17, 2002 and planned to return to his roofing job. AR 309-10. Later that year, on July 19, 2002, plaintiff was hospitalized in Tomah in a two-week program that addressed relapse issues. He attended group therapy and Alcohol Anonymous. He was released to the Veterans Assistance Center in Tomah on August 2, 2002. AR 306.

In March 2003, plaintiff completed a 14-day dual diagnosis treatment program at the Tomah hospital. He stated that his last drink was on February 28, 2003, when he consumed an uncontrolled amount of alcohol and smoked marijuana. He also reported drinking eight liters of Coca Cola a day. Plaintiff was discharged to the Veterans Assistance Center in Tomah. AR 302-03.

Plaintiff was next treated at the outpatient clinic in Tomah by Mary Fields, a staff psychiatrist, on September 5, 2003. He reported that he had been abstinent from alcohol for three months after completing a six-month detoxification and rehabilitation program at the Veterans Administration Hospital. AR 300. The psychiatrist noted that plaintiff was becoming stable but that he acted socially inappropriate by belching aloud and not saying "excuse me." AR 301. On September 9, 2003, plaintiff reported that he was taking his

5

medications and had stopped abusing alcohol on July 31, 2003.  In October 2003, plaintiff reported that he was taking his medications as directed.  Treatment notes indicate that plaintiff's diagnosis was bipolar disorder.  AR 293-94.

On November 3, 2003, plaintiff told a therapist that he had been sober for eight months and that he planned to work at his father's meat shop.  While residing at the Veteran's Assistance Center in Tomah, he participated in the compensated work therapy program.  Plaintiff was released from the center on November 18, 2003, but continued his work therapy.  AR 286.

On December 31, 2003, plaintiff was seen at the clinic.  He was compliant with his medication and said that he had been sober for 10 months but was using marijauna once or twice a week.  His diagnosis was bipolar disorder with alcohol dependence in remission and continuous cannabis dependence.  AR 280-81.

On February 17, 2004 and December 5, 2005, Dr. David Houlihan, a psychiatrist, wrote identical letters on plaintiff's behalf, stating that he had treated plaintiff over the past several years.  He stated that plaintiff had bipolar disorder and had abused substances during his manic phase.  Dr. Houlihan concluded that plaintiff's mental condition "greatly interfered with his ability to maintain gainful employment."  He also wrote that he did not think that plaintiff could maintain employment for at least the next twelve months.  AR 215, 336.

Also on February 17, 2004, psychiatrist Tina C. Ferrer wrote a letter on plaintiff's behalf stating that she had been plaintiff's treating psychiatrist since December 30, 2003 and had seen him for medication management on December 30, 2003 and February 13, 2004. She noted that his diagnoses included bipolar affective disorder, ethanol dependence in remission and cannabis abuse and that he was taking Clonazepam, Gabapentin, Lithium and Olanzapine. Dr. Ferrer also noted that plaintiff had a bilateral hand tremor, a common side effect of lithium. AR 216. At this time, plaintiff was working in the Veterans Assistance Center's wood shop and was able to perform his work duties well. Dr. Ferrer noted that plaintiff's alcohol dependence had been in remission for one year. AR 272. She reported that plaintiff was continuing to use marijuana. She strongly encouraged him to comply with his medications, abstain from alcohol and illicit substances and attend Alcoholics Anonymous or Narcotics Anonymous meetings. AR 273-74.

In March 2004, when Dr. Ferrer saw plaintiff for a medication visit, he reported that he was doing well with no depressive or manic episodes and no medication side effects. Dr. Ferrer noted that plaintiff's appearance had improved from prior appointments and that his condition had slightly improved. AR 261-62. On March 23, 2004, plaintiff used marijuana while working in the wood shop. He was suspended from the program for one week. AR 266. On March 30, 2004, plaintiff reported using marijuana at least once a week and sometimes daily. AR 261. On April 20, 2004, he saw a social worker and told her that

although he had decreased his marijuana use, stopping altogether would be a struggle for him.  AR 254.

On May 25, 2004, at the request of the state agency, Dr. Ferrer completed a psychiatric questionnaire for plaintiff, indicating that she had seen him for monthly 20-minute medication visits for a total of five months.  She noted that plaintiff's memory was intact but his concentration was limited.  She also noted that plaintiff had difficulties relating to others and understanding social norms for conversations and that he had low insight into his limitations.  Dr. Ferrer noted that although plaintiff had not been hospitalized in the previous five months, his prognosis was guarded.  AR 316-17.

There are no treatment records from April 2004 until December 30, 2005, when plaintiff received a certificate of completion of the Residential Addictions and Dual Disorder Treatment Program at the Tomah hospital.  AR 337.  Five months later, in May 2006, plaintiff was treated in Tomah for a seizure.  According to a progress note, plaintiff had been in alcohol treatment in January 2006 and stayed sober for two months.  He reported drinking heavily for two days and then stopping.   He also reported having brief hallucinations about 30 minutes before the seizure began.  AR 359.  The staff neurologist indicated that plaintiff's seizure was likely from alcohol withdrawal.  AR 361.

On August 29, 2006, Dr. A. Bilal, a psychiatrist, wrote a letter on plaintiff's behalf stating that he had treated plaintiff for more than two years and that plaintiff was on a

8

number of psychiatric medications for mood stability and anxiety.  AR 395.  Dr. Bilal diagnosed plaintiff with bipolar mood disorder, general anxiety disorder and alcohol abuse. He indicated that plaintiff abused alcohol when he was in a low mood.  Dr. Bilal stated that plaintiff had been unable to hold a job for most of his life and had been socially isolated, with a "repeated pattern of de-compensating as regards his anxiety and mood symptoms." Dr. Bilal concluded that plaintiff's mood and anxiety problems were exacerbated by his alcohol abuse and that it was unlikely that he could work in the next year or two.  AR 395.

On September 7, 2006, Dr. Houlihan wrote a letter in which he stated that he believed plaintiff was permanently disabled.  AR 396.


C.  <u>Consulting Physicians</u>

On December 18, 2003, Dr. Rebecca Angle, Ph.D. performed a consultative examination for the state agency to evaluate plaintiff's bipolar and substance abuse disorders. AR 193-96.  Plaintiff reported to Dr. Angle that he had completed alcohol detoxification on two occasions and had been sober for 11 months.  He reported that he smoked an eighth of an ounce of marijuana every week and that if "I don't have any meds I use alcohol and pot to bring me down."  AR 193.  Plaintiff told Dr. Angle that he had been working for the past six months in a compensated work therapy program about 20 hours a week and got along well with supervisors and co-workers.  AR 194.

After examining plaintiff, Dr. Angle concluded that he seemed to have difficulty understanding, remembering and carrying out simple instructions and that his ability to maintain his attention and work pace would require very frequent reminders.  She stated that it was likely that plaintiff's interactions with coworkers and supervisors would be appropriate.  AR 196.

On January 6, 2004, state agency consulting psychologist Roger Rattan completed a Psychiatric Review Technique Form for plaintiff and evaluated the evidence under the listing categories for affective disorder and substance addiction disorder.  In addressing the "B" criteria for these listings, he found that plaintiff had moderate restrictions in daily living activities; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Rattan concluded that the evidence did not establish the presence of the "C" criteria.  AR 201-14.  Rattan also completed a mental residual functional capacity assessment for plaintiff, finding that he was moderately limited in his ability to understand, remember and carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; moderately limited in his ability to complete a normal work day and work week at a consistent pace; and

10

moderately limited in his ability to respond appropriately to changes in the work setting. AR 197-99.

On June 16, 2004, state agency consulting psychologist Anthony J. Matkom completed a Psychiatric Review Technique Form for plaintiff and evaluated the evidence under the listing categories for affective disorder and substance addiction disorder. In addressing the "B" criteria for these listings, he found plaintiff had moderate restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Matkom concluded that the evidence did not establish the presence of the "C" criteria. AR 322-34. Matkom also completed a mental residual functional capacity assessment for plaintiff, finding that he was markedly limited in his ability to understand, remember and carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; moderately limited in his ability to complete a normal work day and work week at a consistent pace; and moderately limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. AR 318-21.

D. <u>Hearing Testimony</u>

Plaintiff testified that he last worked two years before the hearing in a part-time work program through the Veterans Administration Hospital making wood stakes.  AR 415.  He also said that he had worked as a roofer in 2001.  AR 410.  Plaintiff admitted that his alcohol use might be affecting his ability to work but that his marijuana use was not.  He said that he had quit past jobs after a few weeks because of his anxiety disorder.  He stated that he could not handle the stress of working.  AR 413, 415-16.

Plaintiff testified that he drank beer and every once in a while smoked marijuana.  He said that he completed an alcohol abuse treatment program on December 30, 2005 and that he had been drunk only six or seven times since then.  Plaintiff reported that he was taking Naltexone to help him abstain from alcohol.  He also testified that he had not drunk any alcohol for a month and a half before the hearing but had smoked marijuana once a week.  Plaintiff denied being addicted to marijuana, stating that he only gets it from his friends.  AR 411, 414-16, 421-24.

Plaintiff described his bipolar condition as cycling between having constant energy and being depressed.  He testified that lithium mostly keeps his bipolar disorder under control and makes him feel more normal.  AR 412.  He regularly has problems with anxiety, which causes his hands to shake to the point where he cannot do anything.  Plaintiff takes Propranolol for the shakes and Clonazepam for his generalized anxiety disorder.

Clonazepam makes him tired occasionally.  AR 418, 420-22.  He testified that on May 2, 2006, he had been admitted to the hospital for a seizure, which his doctor told him was caused by withdrawal from Clonazepam.  Plaintiff had not taken the medication in a few days. AR 413-14.  He testified that if he takes his medications, he does not drink.  However, he uses alcohol to self-medicate if he is out of his medications or stops taking them.  He does not know why he stops taking his medications.  AR 419-20.

### E. The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. § 404.1520.  At step one, he found that although plaintiff had worked since his alleged onset date of January 1, 2000, the jobs were of short duration and were not considered substantial gainful activity.  At step two, he found that plaintiff had severe impairments of alcohol and poly-substance dependency, bipolar disorder and affective disorder.   AR 18.   At step three, the administrative law judge found that plaintiff's mental impairments, considered individually and in combination, did not meet or equal in severity any listed impairment.  AR 18.

Because the administrative law judge found that plaintiff had a medically determinable mental impairment, he then considered the limitations, if any, that would result from that impairment.   Addressing the "B" criteria of the listings for mental

13

impairments, the administrative law judge found that plaintiff had moderate restrictions of the activities of daily living, mild limitations in social functioning and moderate limitations in maintaining concentration, persistence or pace.  He also found that plaintiff had no episodes of decompensation of extended duration.  AR 16.  The administrative law judge noted that his conclusion was consistent with the opinions of consulting psychologists Rattan and Matkom concerning plaintiff's mental limitations.  AR 18.

The administrative law judge stated that "the biggest issue with claimant is his alcohol and poly-substance dependency."  AR 17.  He noted plaintiff's participation in residential treatment programs and self-reported use of marijuana.  The administrative law judge found that plaintiff's alcohol and drug abuse prevents him from working at all.  However, he determined that "if not for these vices, the claimant would be able to perform his past relevant work as a wood shop worker/a cook."  AR 17.  In support, he cited the following evidence:

- Plaintiff's admitted marijuana use, even throughout treatment;

- Dr. Bilal's report that plaintiff's mood and anxiety problems were exacerbated by alcohol abuse;

- Dr. Ferrer's May 25, 2004 report that although plaintiff's concentration was limited, his memory was intact; and

- Dr. Houlihan's opinion that plaintiff's bipolar and substance abuse disorders interfered with his ability to work.

14

AR 16-17.  He found that when plaintiff uses alcohol during his "low phase, he then desires marijuana and that these two substances cause mental instability."  AR 17.  Additionally, the administrative law judge noted that "both the Veterans Administration Medical Center and other psychologist/psychiatrist state, abuse of alcohol with bipolar is disabling, not that bipolar alone is disabling without alcohol."  Id.

At step four, the administrative law judge determined that absent substance abuse, plaintiff retained the residual functional capacity necessary to perform unskilled, simple work at the medium exertional level, lifting 50 pounds occasionally and 25 pounds frequently. The administrative law judge indicated that plaintiff's past relevant work experience included employment as a deli-meat processor (skilled at the medium exertional level), roofer (skilled at the medium exertional level) and delivery man and cook (semi-skilled at the medium exertional level).  The administrative law judge then found that plaintiff was able to perform his past relevant work as a wood shop worker and cook, at least as such work is generally performed in the national economy.  AR 19.  Therefore, he found that plaintiff was not disabled from his alleged onset date through the date of the decision.  AR 29.

F.  Later Submitted Evidence

As an attachment to his supporting brief, plaintiff submitted a mental residual functional capacity questionnaire completed by Dr. David Houlihan in March 2008 and

15

amended in April 2008.  Because this evidence was not part of the record before the administrative law judge or the Appeals Council, it cannot be considered by this court in reviewing the administrative law judge's decision under sentence four of 42 U.S.C. § 405(g). Eads v. Sec'y of Dept. of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) (district court limited to reviewing evidence before administrative law judge at time decision rendered or before Appeals Council if case accepted for review).  Additionally, plaintiff has not requested a remand under sentence six of 42 U.S.C. § 405(g).  See Melkonyan v. Sullivan, 501 U.S. 89, 99-100 (1991) (district court may remand if additional evidence is new and material and claimant shows good cause for failing to present it earlier). Accordingly, this evidence will not be considered by the court.

Also attached to plaintiff's supporting brief are a description of the compensated work therapy program and a Social Security Advisory Service teletype.  Defendant argues that these documents should be disregarded because they were not part of the record before the administrative law judge or the Appeals Council.  However, because both documents merely support the legal arguments that plaintiff makes regarding alleged errors in the adjudicator's decision, I will consider them.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

17

A. <u>Substance Abuse</u>

Plaintiff asserts that the administrative law judge incorrectly applied the law and erroneously found that his alcohol and drug abuse was a contributing factor material to his disability.  In support of this assertion, he claims that the administrative law judge 1) failed to find him disabled before making the determination that his drug and alcohol abuse was a material factor contributing to his disability; 2) disregarded the opinions of Dr. Houlihan and Dr. Bilal that his primary diagnosis was bipolar disorder and that he only self-medicated with alcohol; and 3) ignored his own testimony to this effect.

In 1996, Congress enacted Public Law 104-121, which provides in relevant part that an individual cannot be considered disabled if drug addiction or alcoholism would be "a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  When there is medical evidence showing that the claimant has drug or alcohol addiction, the Social Security Administration considers whether the claimant would be found to be disabled if his alcohol or drug use stopped.  20 C.F.R. § 416.935.  The applicable regulation states:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

18

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. § 416.935.

Thus, the Social Security Administration first makes a disability determination irrespective of substance abuse; then, it considers what limitations, if any, would remain if the claimant's drug or alcohol addiction was absent.  If the claimant's limitations absent substance abuse would not prevent him or her from working, then drug or alcohol addiction is "material" to the disability determination and the claimant cannot receive benefits.  20 C.F.R. § 416.935(b)(2)(i).  Plaintiff agrees that it is his burden to show that his substance abuse disorder is <u>not</u> a contributing factor material to the disability determination.

Although the administrative law judge did not articulate his analysis as clearly as he could have, it is apparent from his decision that he complied with the regulatory requirements.  He considered the medical evidence in the record and determined that plaintiff had the severe impairments of alcohol and poly-substance dependency, bipolar disorder and affective disorder.  The administrative law judge found that plaintiff's alcohol

and drug abuse precluded all work.  However, he determined that absent plaintiff's substance abuse disorder, his bipolar and affective disorders did not meet the criteria of the listed impairments.  The administrative law judge then went on to find that plaintiff retained the residual functional capacity to perform unskilled, simple work activity at the medium exertional level, lifting 50 pounds occasionally and 25 pounds frequently.  Contrary to plaintiff's assertion, the adjudicator made a disability determination irrespective of substance abuse in finding that plaintiff was precluded from all work.  He also properly considered what limitations would remain if plaintiff's drug and alcohol addiction were absent, namely unskilled work at the medium exertional level.

Plaintiff contends that the administrative law judge "played doctor" when he decided that plaintiff's substance abuse disorder was a contributing factor material to his disability. He asserts that the administrative law judge should have called a medical expert or contacted his treating physicians for further clarification of their opinions.  Plaintiff suggests that the administrative law judge improperly reached a medical conclusion on whether plaintiff's substance abuse caused his mental impairments and whether he used substances to control his mental impairments (or self medicated).  The administrative law judge did state that plaintiff used alcohol during his "low phase, . . . then desires marijuana and that these two substances cause mental instability."  However, the regulations make clear that the only

relevant question is whether plaintiff's bipolar and affective disorders would still be disabling if he stopped using alcohol and drugs.  The administrative law judge answered this question.

After considering all of the medical evidence, the administrative law judge found that plaintiff's combined impairments of substance abuse and bipolar disorder were disabling but that by themselves, his bipolar and affective disorders were not.   In making this determination, he considered plaintiff's extensive participation in substance abuse treatment programs and his continual marijuana use.  He relied on Dr. Ferrer's May 5, 2004 report that when plaintiff had not used alcohol for a year, his memory was intact.  He considered evidence that plaintiff showed interest in employment and was capable of it when he was not abusing alcohol or drugs.  He considered the opinions of Dr. Bilal and Dr. Houlihan, who stated that plaintiff could not work because of his bipolar <u>and</u> substance abuse disorders. The administrative law judge also noted that neither physician concluded and no other evidence established that plaintiff's bipolar disorder alone prevented him from working.

Plaintiff criticizes the administrative law judge for not articulating the weight he gave to the opinions of Dr. Houlihan and Dr. Bilal.  However, the administrative law judge made clear that he considered and adopted those opinions to the extent that they showed plaintiff's combined impairments of substance abuse and bipolar and affective disorder prevented him from working.  He did not find that either opinion made it clear that plaintiff would still be disabled if he were not using drugs and alcohol.  Plaintiff contends that the

21

administrative law judge should have contacted Drs. Houlihan and Bilal to clarify their opinions in this regard.   However, an administrative law judge must seek additional information from a treating physician only when the evidence in the record from that physician is inadequate to make a determination about whether the claimant is disabled or it contains a conflict or ambiguity.   20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).   In this case, it was reasonable for the administrative law judge to conclude that the reports of Dr. Bilal and Dr. Houlihan did not need clarification.   It is evident from the brief statements made by both physicians that they did not separately consider the effects of plaintiff's mental impairments.   In fact, Dr. Bilal specifically stated that plaintiff's bipolar disorder was exacerbated by his substance abuse.

The evidence before the administrative law judge was adequate to allow him to decide the materiality of plaintiff's substance disorder despite the lack of a medical opinion on that issue.   See 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (adjudicator may order consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim"); 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2) (iii) (adjudicator may ask for opinion from medical expert on nature and severity of impairment and whether impairment equals listed impairment).   Because of gaps in the medical record, it is difficult to determine when plaintiff was not drinking.   However, he was sober at least from July 31, 2003 until February 2004.   It also is reasonable to infer from the absence of

22

treatment records between April 2004 and May 2006 that plaintiff was sober and his bipolar and affective disorders were under control. During his period of sobriety in 2003 and 2004, plaintiff worked in the compensated work therapy program for 20 hours a week and got along well with his co-workers and supervisors. Although his concentration was limited, his memory was reported as intact. He had no hospitalizations during his sobriety period and was doing well with no depressive or manic episodes and no medication side effects. During earlier periods of sobriety in 2000 and 2001, plaintiff was able to work as a roofer and meat processor. On the other hand, during periods in which plaintiff was drinking alcohol, he admittedly was not compliant with his medications, could not hold a job and required detoxification treatment.

Plaintiff's own testimony supported the conclusion that absent his substance disorder, he would be able to work. At the hearing, plaintiff testified that his bipolar condition was controlled for the most part by medications. He testified that if he takes his medications, he does not drink. However, when he is out of his medications or stops taking them, he uses alcohol to self-medicate. Plaintiff admitted that alcohol might be affecting his ability to work. Medical evidence in the record corroborates his testimony. There is no evidence that when plaintiff took his medications, he experienced disabling symptoms of bipolar or affective disorder. The state agency consulting physicians who issued reports during a period

when plaintiff was sober also determined that plaintiff had no more than moderate limitations in his ability to function.

In sum, there is substantial evidence in the medical record from which the administrative law judge reasonably could conclude that plaintiff's substance abuse affected his mental impairments, even in the absence of a medical opinion to that effect.  Kendrick v. Shalala, 998 F. 2d 455, 458 (7th Cir. 1993) ("How much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment").  Because the administrative law judge properly considered whether plaintiff would still be disabled if he was not a substance abuser, remand is not warranted.  Kangail v. Barnhart, 454 F.3d 627, 628 (7th Cir. 2006).

### B.  Past Work

Plaintiff argues that the administrative law judge erred in finding that he could perform his past work as a wood shop worker.  Specifically, he asserts that the administrative law judge failed to consider the sheltered nature of this work, which he performed as part of a compensated work therapy program through the Veterans Administration.  20 C.F.R. §§ 404.1574(a)(3), 416.974(a)(3).  Plaintiff also contends that the administrative law judge found this job to be "of short duration and under substantial gainful activity levels."  AR 13.  The record shows that plaintiff is correct on both points.  The commissioner concedes that

24

the administrative law judge erred in finding that plaintiff's wood shop job was past relevant work.  However, he asserts that this error was harmless because the administrative law judge properly found that plaintiff was able to perform his past relevant work as a cook.  I disagree.

"To determine whether a claimant can perform his past relevant work, an administrative law judge must compare the demands of the claimant's past occupation with his or her present capacity."  Steward v. Bowen, 858 F.2d 1295, 1299-1300 (7th Cir. 1988). In making this comparison, the adjudicator may rely on the functional demands and duties of the job as the claimant actually performed it or as generally required by employers in the national economy.  Social Security Ruling 82-61; Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2004); Steward, 858 F.2d at 1301.  The commissioner relies primarily on the Dictionary of Occupational Titles for information about the requirements of work in the national economy but may call upon a vocational expert in complex cases.  Social Security Ruling 00-4p; see also SSR 82-61 (jobs listed in the Dictionary are defined as they usually are performed in national economy); Brewer v. Chater, 103 F.3d 1384, 1393 (7th Cir. 1997) ("The DOT is a recognized source of vocational evidence of which an ALJ may take notice when deciding what a typical job description is in the national economy.").

Plaintiff asserts that the administrative law judge erred in not developing the record about the requirements of his past relevant work as a cook.  Although plaintiff is correct, the administrative law judge was not required to develop the record in this manner because he

found that plaintiff could perform the job of cook as it generally is performed in the national economy.  However, as plaintiff points out, the administrative law judge failed to articulate how he reached this conclusion.  Further, although he found that plaintiff had the residual functional capacity to perform unskilled, medium work, he noted in his decision that plaintiff's past work as a cook was semi-skilled and at the medium exertional level.  These findings are contradictory and it is unclear to what the administrative law judge is referring.

Defendant offers no explanation for the administrative law judge's reasoning, only generally asserting that the adjudicator made a reasonable determination.  However, it is unclear why this determination was reasonable.  The administrative law judge did not cite the Dictionary in his decision or call a vocational expert to testify at the hearing.  Defendant contends and plaintiff concedes that the administrative law judge was not required to call a vocational expert or cite specific codes from the Dictionary.  However, at a minimum, he must rationally articulate the grounds for his decision.  Steele, 290 F.3d at 941.  The administrative law judge in this case failed to do this, making it impossible for this court to conduct a meaningful review of his decision.  Id.  (federal court review is confined to reasons supplied by administrative law judge).

I also cannot find that this error was harmless.  It is not at all clear that an individual capable of only unskilled work could work as a cook.  In fact, plaintiff's cursory review of the Dictionary shows that cook positions require a Specific Vocational Preparation (SVP) level

26

of three or more, indicating that it is semi-skilled or skilled work.  Dkt. #19, Exh. 2; see also SSR 00-4P (noting that semi-skilled work corresponds to SVP of three to four and skilled work corresponds to SVP of five to nine).

In his reply brief, plaintiff contends that there are 37 occupations in the Dictionary that possibly could be characterized as cook and all but one are semi-skilled in nature.  Id. The unskilled job is "lumpia wrapper maker" and is listed under the title of "food preparation" instead of "cook."  Id.  (The dictionary does not explain what "lumpia" is.)  If the administrative law judge had made clear that this was the job to which he was referring or it was otherwise apparent that this was the type of work that plaintiff performed as a delivery person and cook at various restaurants, his error may have been harmless.  See Barnhart v. Thomas, 540 U.S. 20, 27-29 (2003) (at step four, commissioner must find only that claimant has capacity to meet demands of past work, not that work exists in significant numbers in national economy).  However, this is not clear from either the administrative law judge's decision or the record as a whole.  Accordingly, the decision of the administrative law judge at step four cannot be affirmed.

On remand, the administrative law judge must rationally articulate the grounds for his decision at step four and build an accurate bridge between the evidence and his conclusion.  If he finds that he is unable to do this, he may need to proceed to step five of the sequential evaluation process.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Kent D. Gritzmacher's application for disability insurance benefits is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

The clerk of court is directed to enter judgment and close this case.

Entered this 22nd day of August, 2008.


BY THE COURT:


/s/

_____
BARBARA B. CRABB
District Judge

28